UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KASSANDRA SINGLETON
19360 Euclid Ave. #200
Euclid, OH 44117

    Plaintiff,

-vs-

DEBORAH MCDONALD
in her official capacity; manager
1200 Ontario Ave.
Cleveland, OH 44113,

DEAN JENKINS
in his official capacity, chief probation officer
1200 Ontario Ave.
Cleveland, OH 44113, and

CITY OF CLEVELAND
as the employer,
601 Lakeside Ave. Rm. 106
Cleveland, OH 44114

    Defendants.

Case No. 1:22 CV 1181

JUDGE    JUDGE RUIZ

MAG. JUDGE PARKER

FILED
JUL 05 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## COMPLAINT FOR A CIVIL CASE
## JURY DEMAND REQUESTED

I. BASIS for JURISDICTION and VENUE

1. Plaintiff is an individual and resides in this Court's District.

2. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. sec. 1331 because the court has jurisdiction over Title VII employment laws against retaliation, and harassment pursuant to 29CFR part 1614.

3. The Defendant is a legally defined business entity, organized under the laws of the State of Ohio and has its corporate offices at 601 Lakeside Ave., Cleveland, OH 44114.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b) as the events that gave rise to this action occurred in the City of Cleveland, Cuyahoga County, State of Ohio, which lies within the jurisdictional boundaries of the United States Court, Northern District of Ohio.

## II. FACTUAL BACKGROUND

5. In July 2000, the Defendant hired the plaintiff as a bailiff. Her work hours were 4 days a week, ten hours a day; Tuesday thru Friday 7:30 a.m. until 5:30p.m. In 2008, the bailiff's department was absorbed into the probation department.

She worked as a deputy bailiff until October 2017, when the Cleveland Municipal Court hired her as a probation officer.

The first week, Chief Probation Officer Dean Jenkins instructed the plaintiff that she was required to assist Stephanie Pope-Earley with her newly formed PSA unit (Presentence Assessment). On November 14, 2017, David Roby sent a memorandum requesting that each team member provide Kathy with a summary of their current comp time balance.

At that point in time, plaintiff had only incurred 18 days working in that unit. After four months when wages were not paid, the plaintiff complained to her immediate supervisor Morris Jones. Mr. Jones accused the plaintiff of not performing her duties as a probation officer when he agreed for her to work between the two units. Mr. Jones filed a PIP (Performance Improvement Plan) with Supervisor Patricia Schneider, which is a deficiency that can extend the probationary period for an additional 60 days. Plaintiff rebutted the allegations. Human Resource Liaison Tonya Jones concluded that the plaintiff who worked in probation, PSA and on Saturdays were not deficient and would not be penalized.

6. On November 15, 2019, plaintiff asked Chief Jenkins about the compensation and the compensatory time as well as returning to her former hours of work. On November 16, 2019,

Jenkins wrote: "I am approving this request beginning the week of 11/19, however, Kassandra will be off Monday due to working Saturday Beginning 11/26 she will work Tuesday to Friday." In December 2019, the plaintiff filed a Conflict Resolution to receive the unpaid wages. David Roby resigned and the plaintiff was reassigned to supervisor Kevin McGlynn.

7. Kevin McGlynn did not answer any questions relating to the wage issues. He would ask Debbie McDonald to answer for him and in most instances, McDonald was dismissive.

March 12, 2020, COVID arrived. Plaintiff filed application to work from home, McGlynn did not sign the form as the supervisor, so plaintiff didn't get paid. Plaintiff made application for Emergency paid sick leave request form for Covid-19-related leave and FMLA.

McGlynn did not sign the applications, so the plaintiff did not receive wages during this time, although she worked.

On November 10, 2020, McGlynn sent an email. "Please see the amended work from home guidelines. The significant change is that all reports need to be turned into the record room four days instead of 2 days before court."

November 11, 2020: "Kevin you're changing my reports without communicating when Judge Earley ordered supervision is not allowed to change reports without a consultation with the original author."

December 3, 2020, Supervisor McGlynn sent the plaintiff a copy of a November Incident Report that was generated by Debbie McDonald who had called the plaintiff's probationer Shakira Holloway to make the report." Plaintiff responded: "There are no allegations that would warrant an investigation. Ms. Holloway failed to describe any injuries physical, mental or emotional that she sustained. This is another example of intimidation." As a result of this complaint not producing the desired results, Jenkins reassigned the plaintiff to supervisor Patrick Sunyak at the East side office.

8. November 2020, plaintiff filed a complaint with the Equal Employment Opportunity

Commissioner against the above-named individuals for workplace harassment and intimidation. The Commissioner issued its first Notice of right to sue. The plaintiff could not find local help so the claim expired in 90 days.

9. Beginning April 2021, plaintiff was reassigned to supervisor Patrick Sunyak at the East side office. Immediately, Sunyak began to change the plaintiff's reports. When the plaintiff complained to Jones and Jenkins, a meeting was held. It was decided that the East side office should be closed and the employees return to downtown. The issues of compensation or the changing of the reports were never mentioned or discussed.

9. September 2021, plaintiff returned to the downtown office with supervisor Peter Roche. Plaintiff engaged Roche as a go between in an effort to resolve the wage issue. He never addressed the wage issue. In November 2021, plaintiff filed a second EEOC complaint because now Roche was putting negative comments about the plaintiff in court view.

On February 22, 2022, the City through its attorney Tiffany Fischbach filed a Position Statement with the Commission but did not serve the plaintiff. On May 10, the plaintiff discovered the position statement and rebutted it. On May 24, 2022 the Commission closed the case and issued the plaintiff a second Notice of Right to Sue.

10. On June 10, 2022, Roche gave the plaintiff a Pre-disciplinary hearing alleging that she had given one of her probationers legal advice in violation of CMC Ethic codes 1.1, 1.6 and 1.7. On June 17, plaintiff was terminated based upon these accusations.

## IV. COUNT 1

### VIOLATION OF U.S. CONSTITUTION, AMEND. SIX

11. Plaintiff repeat and reallege paragraphs 1-10 as though fully set forth herein.

12. Defendants reactions to an unsubstantiated alleged act caused it to determine that a criminal violation had been committed by the plaintiff, but, the defendant did not afford the plaintiff the right to confront her accuser before she was discharged from employment.

## V. COUNT 2

13. Defendants retaliated against the plaintiff because she asked management to correct the discriminatory wage disparate of 50 weeks times $123 per Saturday for a total of $6, 150, that Jenkins refuse to authorize. This is in violation of Equal Pay Act

## VI. COUNT 3

14. Defendants created a hostile work environment for plaintiff by harassing her and sabotaging her work, making it appear as if she's incompetent. This affected her psychological well-being.

## VII. CLAIM

15. Defendants practices create a government-imposed coercion and duress, which causes the plaintiff:

a) diminished earning capacity

b) mental anguish,

c) anxiety attacks

d) depression, and

e) loss of standing in the community.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants accordingly:

A) Plaintiff return to her formal position as probation officer.

B) For an order from the Court determining and declaring that the Defendant's acted unconstitutionally and outside of their authority.

C) For an order from the Court issuing preliminary and permanent injunctions enjoining the Defendants from future harassment and retaliation.

D) Compensatory damages in the amount of $500,000.

E) Any and all other forms of relief that this Court deem fair, equitable and just.

F) Plaintiff reserve the right to amend the Complaint.

Respectfully submitted,

*K. Silet*,
Kassandra Singleton.